### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
#### www.flsb.uscourts.gov

IN RE:                                                    CASE NO. 08-17980-BKC-JKO
                                                          CHAPTER 7

TRAFFORD DISTRIBUTING CENTER, INC.
a/k/a Trafford Distribution Center, Inc.,

      Debtor.

_____/

SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

        Plaintiff,

vs.

RICHARD I. CLARK AS TRUSTEE FOR
MATTHEW WORTLEY TRUST d/b/a X CO. FINANCE,
RICHARD I. CLARK AS TRUSTEE FOR            Adv. Case No. 08-01759-JKO
MATTHEW WORTLEY TRUST d/b/a
X CO. FACTORING CORP., RICHARD I. CLARK
d/b/a X CO. FACTORING CORP., RICHARD I. CLARK
d/b/a X CO. FINANCE., RICHARD I. CLARK AS
TRUSTEE FOR JOSEPH M. WORTLEY TRUST d/b/a
X CO. FINANCE, RICHARD I. CLARK AS TRUSTEE
FOR JOSEPH M. WORTLEY TRUST d/b/a
X CO. FACTORING CORP., RICHARD I. CLARK d/b/a
MATTHEW WORTLEY TRUST, RICHARD I. CLARK
d/b/a JOSEPH M. WORTLEY TRUST

        Defendants.

_____/

SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

        Plaintiff,

vs.

LIBERTY PROPERTIES AT TRAFFORD, LLC,            Adv. Case No.:08-01792-JKO
LIBERTY ASSOCIATES, LC, AND
ADVANCED VEHICLE SYSTEMS, LLC,

        Defendants.

_____/

SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

       Plaintiff,

vs.

BARBARA WORTLEY,                    Adv. Case No.: 08-01793-JKO

       Defendant

_____/

### DEFENDANTS' SECOND MOTION TO RECUSE AND TO STAY PROCEEDINGS PENDING DISCOVERY ON THE ISSUE OF RECUSAL

Defendants, RICHARD I. CLARK AS TRUSTEE FOR THE JOSEPH M. WORTLEY TRUST d/b/a X CO. FACTORING CORP. ("Mr. Clark") and in all other capacities named herein, LIBERTY PROPERTIES AT TRAFFORD, LLC ("Liberty Properties"), LIBERTY ASSOCIATES, LC ("Liberty Associates"), ADVANCED VEHICLE SYSTEMS, LLC ("AVS"), and BARBARA WORTLEY ("Mrs. Wortley") (collectively referred to herein as "Defendants"), by and through undersigned counsel and pursuant to 28 U.S.C. § 455 and the Code of Judicial Conduct for United States Judges, Canons 2 and 3, file this Second Motion to Recuse and to Stay Proceedings Pending Discovery On the Issue of Recusal. As grounds therefor, Movants would show that:

1.      The Court's statements at hearing on the initial Motion to Recuse, including the Court's announced stipulation as well as the statements contained in the Court's Order Denying Motions to Recuse Judge [DE-215 in Case No. 08-01759-JKO, DE-255 in Case No. 08-01792-JKO, and DE-238 in Case No. 08-01793-JKO] demonstrate new and additional grounds that recusal is

clearly called for in this case.[1]

2.    At the hearing on the Motion to Recuse, the Court commenced the hearing by stating that, for purposes of recusal, Mr. Fender should be treated at all material times as the Court's spouse. Curiously, thereafter, in the Court's "Order Denying Motions to Recuse Judge" ("Order"), the Court consistently refers to Mr. Fender as the Court's "fiancé". In its Order the Court advances the proposition that the basis for recusal is "because my fiancé works for Ruden McClosky".

3.    In fact, at the time that Mr. Bakst and his firm, Ruden McClosky, extended a job offer to Mr. Fender, he was obviously not employed by Ruden McClosky but by a firm in Orlando. Moreover, despite the Court's attempt to depict Mr. Fender as the Court's spouse for purposes of the recusal motion, Mr. Fender and the Court would have to be maintaining a household together in order to be considered spouses pursuant to the Judicial Canons.[2] Fundamentally the Court has ignored the distinction between existing and ongoing employment, and obtaining new and different employment in another region of the State.

_____

[1]Defendants previously submitted a Motion to Recuse and to Stay Proceedings Pending Discovery on the Issue of Recusal on August 24, 2010 [DE-211 in Case No. 08-01759-JKO], which was brought on for hearing, by Court Order, less than 48 hours later. Proceedings were held on August 26, 2010, and the Motion was denied by Order dated August 30, 2010 [DE-215 in Case No. 08-01759-JKO]. Prior to the hearing Defendants had served Plaintiff's counsel with Notices for Deposition, articles, and copies of docket entries, and those matters were argued to the Court; however, the Court denied discovery and then ordered that proffer stricken from the record [DE-216 in Case No. 08-01759-JKO]. These items are resubmitted, in revised form, to delete requests relating to moot issues, along with the additional exhibits listed herein. See Exhibit "A" - revised Notices of Deposition.

[2]See commentary on Canon 3C: "Recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship."

4.      Further, it is clear that Mr. Bakst and Ruden McClosky knew of the intimate

relationship between the Court and Mr. Fender at the time of the hiring. Attached, as Exhibit "B",

is a copy of Mr. Bakst's letter indicating that a policy was allegedly put into place in order to prevent

impropriety as a result of this hiring.[3] Therefore, Mr. Bakst and Ruden McClosky were fully aware,

at the time Mr. Fender was hired, that these relationships existed and it was necessary to consider

and abide by applicable professional regulations.

5.      A threshold issue for recusal analysis is the legal effect of Ruden McClosky

offering employment to Mr. Fender, and thereby enabling Mr. Fender to move from Orlando to Ft.

Lauderdale to live with the Court.[4] What was the relationship between the Court and Mr. Fender at

the time the offer of employment was extended?  While the Court now states in the Order that Mr.

Fender and the Court were engaged at this time, it appears they were not spouses, as Mr. Fender

appears to have been residing in Orlando and the Court residing in Fort Lauderdale.  It was the offer

of employment that enabled this development, and Movants object that these events were not

disclosed to them at the time.

_____

[3]A further appearance of impropriety exists inasmuch as it is not known how Mr. Bakst
became aware of the intimate relationship or engagement.  Certainly, a reasonable inference is
that either Mr. Fender made this information known in seeking his job or that the Court
communicated this information.  In any event, the offering of a job by opposing counsel to the
Court's intimate friend certainly gives the appearance that the Court is using its office to obtain
special treatment for the Court's friend, or to receive a personal favor as a result of judicial
office.  It is clear that the offer of employment allowed Mr. Fender to move from Orlando, where
he had practiced law continuously for fourteen (14) years, to live with in Fort Lauderdale with
the Court.  It is hard to imagine what greater personal favor Mr. Bakst and Ruden McClosky
could provide to the Court.

[4]By separate Motion, Movants intend to seek disqualification of Plaintiff's counsel as a
result of this conduct.  See Rules of Professional Conduct 4-3.5 and 4-8.4 (d) and (f).

6.       Moreover, in its Order and in the proffered stipulation, the Court mistakes the full basis of the appearance of impropriety. The proceedings are not tainted merely because the Court's fiancé "works for Ruden McClosky". The proceedings are tainted because it appears that the Judge's office may have been used to obtain special treatment or favor for the Judge's fiancé or, alternatively, that counsel curried favor with the Court in this manner. Either way, the conduct, undisclosed, mandates recusal.

7.       In its Order, the Court cites case law dealing with relatives, including spouses and children employed by law firms practicing before a court. Each of these cases was reviewed by undersigned counsel before filing and arguing the Motion. These cases are all inapplicable to the first issue on appearance of impropriety, i.e., the appearance that the Court obtained special treatment for its fiancé, wherein Mr. Bakst and his firm offered a job to Mr. Fender so that Mr. Fender could relocate to South Florida and reside with the Court. This was done while Summary Judgment motions were pending in these cases, and well into this litigation.

8.       After the job offer was accepted and Mr. Fender moved to South Florida to reside with the Court, the Court's proposed stipulation, that Mr. Fender is a spouse, is accurate. However, the Court did not allow any discovery to determine whether or not Mr. Fender has a profit participation or any financial interest related to the profitability of this small bankruptcy division in which he practices, or whether the anticipated fees in these cases have some effect on his employment.[5] The Court made findings of fact, with no discovery, nor evidentiary hearing, that: "[m]y fiancé is not a partner at Ruden McClosky and there is nothing proffered (other than bare

---

[5]See Exhibit "A", the discovery Defendants seek in these regards.

suspicion, his employment, and disagreement with my rulings) to suggest that he has participated in this case." Order at pp. 7-8. Discovery is properly allowed and evidence properly submitted, before a Court may reach such factual conclusions. The Court's handling of this matter, by making its findings and rulings from the bench less than 48 hours after the motion was filed, with no discovery, furthers the appearance of impropriety in this case.

9.      Mr. Fender is listed as "Of Counsel" to the Firm. While the Court found, without evidence, that Mr. Fender is "a salaried attorney", Defendants do not accept that he is merely salaried, and seek discovery to determine if the outcome of this case might have economic, or other, effect on Mr. Fender.[6] Defendants reject the representation that Mr. Fender is merely a salaried employee, and seek discovery. Defendants assert that because Mr. Fender is a 15-year lawyer, is Of Counsel, and is closely affiliated with the small three-person bankruptcy practice along with Mr. Bakst, that he would appear to be entitled to bonuses and/or profit participation. He would appear not to be equivalent to a salaried Associate. This creates its own appearance of impropriety.

10.     The designation "Of Counsel" can follow different meanings[7] and it is appropriate

---

[6]See Exhibit "A" - Notices of Deposition, and footnote 7, *infra*.

[7]See, e.g. ABA Formal Opinion 90-357 provides four acceptable definitions of the term "Of Counsel":

- A part-time practitioner who practices law in association with a firm, but on a basis different from that of the mainstream lawyers in the firm. Such part-time practitioners are sometimes lawyers who have decided to change from a full-time practice, either with that firm or with another, to a part-time one, or sometimes lawyers who have changed careers entirely, as for example former judges or government officials.
- A retired partner of a firm who, although not actively practicing law, nonetheless remains associated with the firm and available for occasional consultation.
- A lawyer who is, in effect, a probationary partner-to-be: usually a lawyer brought into the firm laterally with the exception of becoming partner after a relatively short period of time.
- A permanent status between those of partner and associate, having the quality of tenure, or something close to it, and lacking that of an expectation of likely promotion to full partner status.

to discover the intentions and practice in this case by reviewing correspondence and agreements relating to negotiations, the offer and acceptance, and conduct and correspondence during the ensuing year.

11.    Also, the terms of the working relationship between Mr. Bakst and Mr. Fender are properly discovered as they are highly relevant. This is clearly not a situation where they work in different departments, isolated from one another. Mr. Bakst appears to be Mr. Fender's direct supervisor, and they work together on numerous cases.[8]

12.    Defendants should be provided with the opportunity to take discovery to determine if there is a substantial interest that will be bestowed on Mr. Fender with regard to collection of fees. This is especially the case where Mr. Bakst will likely be seeking enormous fees as a result of this litigation, which can only be collected from the proceeds of litigation, and is therefore essentially contingent and dependant upon this Court's rulings in this case.

13.    Also, it is reasonable to assume, and allow discovery, concerning the financial expectations, management, consequences and rewards relating to collections in the Bankruptcy practice group of Ruden's West Palm Beach office. The financial challenges of the Ruden Firm during the relevant time frame are well publicized[9] and it is appropriate to inquire if the operations of the group stood to be rewarded or threatened, in the event that a substantial recovery, or no

---

[8]See Exhibit "C" - Docket sheets reflecting G. Steven Fender, Esq. as trial counsel for Michael Bakst, Esq., as Trustee, and G. Steven Fender, Esq. and Michael Bakst, Esq. as co-counsel.

[9]See Exhibit "D" - Articles reflecting attorney departures, office closures and financial difficulties at Ruden McClosky during the relevant time period.

recovery, was made in this case. It is also appropriate to inquire if an anticipated fee in these particular matters was projected, noted or discussed by Mr. Bakst's or Ruden's management, and if Mr. Fender was included in the discussion. It is highly likely, especially in this economic climate, that the anticipated fees from this case were closely scrutinized and followed by Ruden's management, and that such attention is documented in management reports and emails.

14.    Here, the amount of fees to be awarded to Mr. Bakst and Mr. Fender's law firm will be determined by this Court and will be entirely effected by the outcome of this case as to the amount of the recovery, the amount of the fees, and the sources to collect any such fees. Mr. Fender has a substantial interest in the outcome of these matters as the very profitability of this small bankruptcy section of the firm, as well as the firm's reputation with clients and ability to attract new clients, will be impacted by the results of these cases. Moreover, Mr. Fender's direct supervisor and close colleague, Mr. Bakst, will be seriously affected by the outcome of this Court's decisions on attorneys' fees. In fact, at a time when it is public knowledge that the Ruden firm has radically downsized,[10] the results of this case, with fees claimed by Mr. Bakst in excess of $500,000, may even effect the continued employment of Mr. Fender at Ruden McClosky.

15.    The progress of the relationship the Court has with Mr. Fender, the connection with Mr. Fender's firm which is prosecuting these actions, and the Bankruptcy practice group and colleague (Mr. Bakst) who stands to benefit, or not, from attorney fee awards by this Court, which are based largely on the results that have been decided by this Court or will be decided by this Court, give rise to appearance of impropriety in violation of 28 U.S.C. § 455 and the Code of Judicial

---

[10]See "D" - Articles.

Conduct for United States Judges, Canons 2 and 3. Moreover, Mr. Bakst's actions, in hiring the Court's fiancé, to facilitate Mr. Fender's move to South Florida to become the Court's spouse, likewise amounts to an enormous favor that gives rise to an appearance of impropriety. Additionally, in accordance with 28 U.S.C. § 455 and the Code of Judicial Conduct for United States Judges, Canons 2 and 3, this relationship should have been disclosed as it was and is grounds for recusal of this Court. Finally, in the event that the Court's spouse may stand to receive a substantial economic benefit, which should be the subject of discovery, would give rise to mandatory recusal in accordance with 28 U.S.C. § 455 (b).

16.    As to the issue of whether or not Mr. Fender has worked on these cases, undersigned counsel made it clear at the previous hearing that they have not yet reviewed any timeslips or deposed any witnesses and has not yet had an opportunity to determine if Mr. Fender, who is Mr. Bakst's attorney in other cases,[11] and who works closely with him in the Ruden McClosky bankruptcy group,[12] has in any way intentionally or inadvertently involved himself with this case.

17.    The Court's refusal to permit discovery into these extremely relevant issues creates a further and overwhelming appearance of impropriety, and raises an issue of why the Court would want to prevent discovery concerning these material and essential facts. The fact that it is unseemly for the Court to even be considering and ruling on issues relating to discovery from the Court's spouse, puts the Court in an untenable position that mandates recusal. Similarly, the fact that this conduct has prompted a motion to disqualify Mr. Fender's direct supervisor and his law firm creates

---

[11]See Exhibit "C" - Docket sheets reflecting G. Steven Fender, Esq. as trial counsel for Michael Bakst, Esq., as Trustee.

[12]See Exhibit "E" - Printouts from Ruden McClosky website.

yet another untenable position for the Court that requires recusal.

      18.     Finally, the Court clearly lost its objectivity as reflected in the Order when the Court

states:

> Any strongly-worded language in my order or in the courtroom has resulted
> from **astonishment at how the Defendants have chosen to handle certain
> affairs over the past decade, and particularly in the months preceding
> the bankruptcy filing. I made factual findings regarding fraudulent
> activity and intent to deceive this court based upon the evidence
> presented, and my language reflected those findings.** I have no personal
> knowledge of disputed evidentiary facts concerning these proceedings
> because my knowledge is based entirely upon the record and evidence
> presented at trial.

Order at p. 5 ¶ 1.  In fact, ten years ago the Debtor had not even been formed.  Ten years ago, Liberty

Properties was collecting full market rent from a printing company known as Liberty Source W, and

thereafter, Properties was cross guaranteeing multi-million dollar loans for Source W to refurbish

Source W's web presses.  It was seven (7) years ago, after Source W tendered its assets to the Bank,

that Trafford was formed by Barbara Wortley.  Mrs. Wortley capitalized Trafford with her own

funds, purchased Source W's shelving and office equipment from the Bank, and entered into a

below-market, "sweetheart" tenancy with Properties.  Also, less than seven years ago, the Joseph M.

Wortley Trust funded Trafford's operations pursuant to a Factoring Agreement, and over Two

Hundred Thousand Dollars was wired to Trafford between October, 2003 and January, 2004.  It is

"astonishing" that Plaintiff could allege, and the Court could accept, that this conduct was wrongful.

These cases involve simple disputes over Mrs. Wortley's $5,000 monthly management fee,

Properties' efforts to collect market rent in the months when the NLRB started squeezing Trafford,

and whether the funds provided to Trafford by the Joseph M. Wortley Trust allow factoring rights

against Trafford's receivables, or whether they merely allow a claim against the Estate. The extraneous charges of fraud, ill intent and breach of fiduciary duty seem better explained by the Judicial improprieties asserted herein than by the factual findings and legal conclusions proposed by Plaintiff's counsel and accepted by the Court. There is a genuine dispute over whether the amounts removed from the Debtor in months preceding the bankruptcy should be returned; however, judicial sniping about "astonishing" conduct "over the past decade" demonstrates disregard for the stipulated facts and undisputed evidence, a lack of objectivity, and a necessity for recusal and vacatur of the Court's Orders.

**WHEREFORE**, Defendants request an entry of an Order Granting this Second Motion to Recuse, or Stay Proceedings Pending Discovery on the Issue of Recusal, and that all Orders entered by this Court from and after July, 2009 be vacated.

## MEMORANDUM OF LAW

Authorities were previously argued to this Court in Defendants' Motion to Recuse and to Stay Proceedings Pending Discovery on the Issue of Recusal [DE-233 in Case No. 08-01793-JKO], which are incorporated herein by reference and will not be restarted. Additional arguments are made herein, consistent with such authority. Advisory Opinion No. 58 is especially instructive with regard to this case. As the Committee on Codes of Conduct Advisory Opinion No. 58 stated:

> A typical and more difficult situation arises when the relative is employed by the firm as either an associate or non-equity partner. For the purposes of this opinion, a non-equity partner is understood as one who receives a fixed salary, is not entitled to a share in the firm's profits, and has no interest in the firm's client list or good will. If the relative is an associate or non-equity partner and has not participated in the preparation or presentation of the case before the judge, and the relative's compensation is in no manner dependent upon the results of the case, recusal is not mandated.

The Judge, however, must be mindful of Canon 2A which directs the Judge to act at all times in a manner that "promotes public confidence in the integrity and impartiality of the judiciary" as well as the general command of Canon 3C1 which states the Judge should recuse in a proceeding in which that "'judge's impartiality might reasonably be questioned". Accordingly, although recusal may not be prescribed for participation by a relative who is an associate or non-equity partner, other circumstances may arise that in combination with the relative status at the firm could raise a question about the judge's impartiality and thereby warrant recusal.

In the case at bar those additional circumstances include the fact that Mr. Fender is a 15-year lawyer and would appear to be entitled to bonuses or profit distribution at the firm. An additional circumstance is that Mr. Fender was not employed by the firm, but was offered employment during the pendency of this case. He was an intimate friend of the Court and that job offer enabled Mr. Fender to relocate from Orlando after 14 years to take up residence with the Court. These circumstances, in combination with Mr. Fender's close collaboration with Mr. Bakst, certainly raise a question about this Court's impartiality and warrant a recusal.

Perhaps some examples are in order for the Court's consideration. It appears that pursuant to this Court's view of its ethical requirements, undersigned counsel, in another proceeding with this Court, could offer Mr. Fender a job for twice his current salary and employ him as an associate. If this were to occur, the Court, by its reasoning, actually advances the proposition that this would not need to be disclosed to opposing counsel. The Court fails to distinguish the difference between having ongoing employment and being offered new employment during pending litigation.

Another scenario for the Court to contemplate would be a jury trial before the Court. What would the Court's reaction be if undersigned counsel offered a juror's wife or a juror's fiancée a job

during jury deliberations?

On Page 4 of the Order, the Court stated:

> Record disclosure would have only been appropriate, however, if the basis for disqualification arose solely under § 455 (a). My fiancé's employment falls squarely within the enumerated list of § 455 (b) and, if recusal were required, § 455 (e) would have explicitly prohibited me from accepting a waiver from the movants. Disclosure and waiver would therefore have been unavailable.

Order at p. 4. Potential applicability of § 455 (b) does not avoid application of § 455 (a). Also, record disclosure was appropriate pursuant to § 455 (a) as to the <u>offer</u> of employment. Mr. Bakst facilitated the hiring of an intimate friend of the Court. That conduct did not trigger § 455 (b) or § 455 (e) because at the time the favor was done the recipient was not a relative or spouse of the Court. Arguments concerning Section § 455 (b) and § 455 (e) only became operative after Mr. Fender received the favor, relocated to South Florida, and began maintaining a household with the Court. Recusal under those sections is appropriate if Mr. Fender is either acting as a lawyer in the proceeding or has an interest that could be substantially affected by the outcome of the proceeding. Obviously, since those matters are solely within the purview of Ruden McClosky and Mr. Fender, discovery on those issues should go forward.

With regard to the Court's analysis under § 455 (b), the Court failed to allow any discovery and instead made factual findings which necessarily involved transmission of material evidence to the Court, outside the presence of undersigned counsel. The Court made findings and conclusions regarding the terms of Mr. Fender's employment, both economic or non-economic, as well as the terms or adequacy of any preventative measures that have been put in place to eliminate the possibility of inappropriate communication between Mr. Fender and Mr. Bakst relating to this case.

However, little was presented to the Court on these issues, which implies that the Court was obtaining facts outside of these proceedings or making assumptions without factual basis. Either way, the issues were ripe for discovery and consideration in these proceedings, not immediate conclusion by the Court.

It is appropriate for the Court to deal with the disclosures that should have actually been given in this case. The disclosure would not have been, "For the record, I'm getting married to an attorney who works for the Plaintiff's firm..." The disclosure should have been:

> For the record, Mr. Bakst, and Ruden McClosky are offering a job to my fiancé, Mr. Fender, who currently works in Orlando. This will enable Mr. Fender to move to Fort Lauderdale, where he will reside with me and become my spouse. Plaintiff's counsel tells us that Mr. Fender will be "Of Counsel" to the Ruden McClosky Firm, where he will work closely with Plaintiff's counsel, Mr. Bakst, in his three-person bankruptcy division.

Later, after Mr. Fender took up residence with the Court and became his spouse as defined by the Canons, the Court should have made a separate disclosure, as follows:

> My spouse works at Ruden McClosky in an Of Counsel basis. I can represent to counsel that he is solely working on a salary basis and does not have any bonus or profit participation entitlements even though he has been a lawyer for fourteen years. Safeguards have been put into place so that Mr. Fender will not be involved in any cases that appear before me in any way. While this may cause an appearance of impropriety, or may present an appearance of impropriety, please confer outside my presence and notify my law clerk when you are prepared to give your mandatory record waiver.

The Court, at hearing, attempted to limit Defendants' analysis to a situation where Mr. Fender was at all times a spouse. Thereafter, in its Order, it abandoned this approach and treated Mr. Fender as a fiancé. In its Order on Recusal, the Court portrays Mr. Fender as a fiancé who happens to work at the Ruden McClosky law firm. The Court overlooks the fact that there is a difference between

a situation where Ruden McClosky hires the Court's fiancé which offer of employment facilitates the fiancé's move from Orlando to South Florida, to take up residence with the Court as spouses.

In the latter, there is an appearance that the Court obtained the employment and the benefit for the friend. In the former, the spouse already had the benefit of employment. The Court analyzes the issue as if Mr. Fender was a spouse at the time of the job offer, and implies that Mr. Fender was already employed at the time that the disclaimer should have been made. Neither is the case. Mr. Fender was not employed, was not a spouse, and the conduct of the Court and Mr. Bakst has every appearance of impropriety.

Under the circumstances of this case, the Court properly recuses itself from this case, and vacates all Orders from and after July, 2009, or, alternatively, to stay all proceedings in this case until discovery can be held on the issues.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By: _____

      **Douglas C. Broeker, Esquire**
      Florida Bar No. 306738

Respectfully submitted,

By: _____
**Douglas C. Broeker, Esquire**
Florida Bar No. 306738
Doug@broekerlaw.com
SWEETAPPLE, BROEKER & VARKAS, P.L.
777 Brickell Avenue, Suite 600
Miami, Florida 33131
Tel.: (305) 374-5623
Fax.: (305) 358-1023

and

By: _____
**Robert Sweetapple, Esquire**
Florida Bar No. 0296988
rsweetapple@sweetapplelaw.com
SWEETAPPLE, BROEKER & VARKAS, P.L.
199 East Boca Raton Road
Boca Raton, Florida 33432
Tel.: (561) 392-1230
Fax.: (561) 394-6102
Attorneys for Defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such to: **Marla B Neufeld, Esq., and Michael R. Bakst, Esq.,** 222 Lakeview Ave #800, West Palm Beach, FL 33401, efile1542@ruden.com, efile2565@ruden.com on this **3rd** day of September, 2010.

By: _____
**Douglas C. Broeker, Esquire**
Florida Bar No. 306738

M:\wp51\Active.Client.Files\Trafford BKC\Judge Olson Disqualification Issues\Motions\Final Second Motion to Recuse & Stay Proceedings.wpd